Cleo Ray DAVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 36350.

Court of Criminal Appeals of Texas.

Jan. 15, 1964.

C. B. Bunkley, Jr., Dallas, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 12 years.

In view of our disposition of the case, a recitation of the facts is not deemed

necessary. Appellant filed a motion to quash the indictment against him returned by the July term of the grand jury in 1962, on the grounds that persons of African descent (of which he is a member) were systematically excluded from the grand jury which returned the instant indictment against him and from service on the petit juries in Kaufman County, and relied upon the recent history of Kaufman County in support of his contention.

At the hearing on the motion, appellant called 54 witnesses consisting of former jury commissioners, grand and petit jurors, and courthouse officials of said county, and the State called none. Appellant introduced evidence showing that no Negro was on the grand jury which returned the indictment against him, that no Negro was on the jury who tried him, and that within the last 18 years prior to the return of the indictment against him, only two Negroes had served on grand juries in said county, even though the population of said county contained 30 percent non-whites at the time of the 1960 census, and 28.6 percent in 1950. It should be noted as to Brooks and Anderson, the two colored men who served as grand jurors, that both had served on the same grand jury in 1961. (Not the grand jury which returned this indictment.) One of the jury commissioners who served on the commission which selected them testified that the Judge did not "instruct", but told the commission "that there were some cases coming up that we should give some thought to having some colored people on the jury because of the cases coming up." at that time. While there was proof that "many" of the colored people in Kaufman County were householders in the County or freeholders in the State, could read and write and were over 21 years of age, such proof would seem to be unnecessary because the Supreme Court of the United States in Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839, said, " * * * and in the absence of any countervailing testimony, there is no room for inference that

there are not among them householders of good moral character, who can read and write, qualified and available for grand jury service."

It was further shown by the testimony of the District Judge who had served Kaufman County 18 years until his resignation in 1961, that he had never during that period of time in Kaufman County appointed a Negro as the jury commissioner, nor had a Negro sat upon a petit jury which had reached a verdict, and by the testimony of the Sheriff and the District Clerk that they did not recall a Negro serving on the petit jury since 1945 and 1955, respectively.

The two most recent cases from the Supreme Court which have come to our attention are Eubanks v. Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991, and Patton v. Mississippi, 332 U.S. 463, 68 S. Ct. 184, 92 L.Ed. 76.

Eubanks deals with the grand jury, and the Supreme Court held that even though members of the colored race had been placed in the pool (comparable to our panel) only one had actually served over a period of 18 years, and that systematic discrimination had been shown.

Patton deals with both the grand and petit juries and it was there shown that one member of the colored race had been summoned and that one jury supervisor testified that he had put two or three Negroes on the jury list. In Patton the Negro population was comparable to that in the case at bar, and the Supreme Court held that where the accused made a very strong showing that Negroes were systematically excluded from jury service because of race, it became the duty of the State to try to justify such exclusions as being brought about for some reason other than racial discrimination. The Court went further and said that the key fact was that no Negro had *served*. See also the language employed by the Court in Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866. "The exclusion of otherwise

eligible persons *from jury service* solely because of their ancestry or national origin is discrimination prohibited by the Fourteenth Amendment."

Having concluded that appellant has met his burden of showing that the race of which he is a member were systematically excluded from service on the grand juries of Kaufman County, we are bound by the decision of the Supreme Court of the United States cited in Stoker v. State, Tex.Cr.App., 331 S.W.2d 310, and it becomes our duty to declare the indictment void because of racial discrimination in the selection of the grand jury which returned the indictment against appellant.

The judgment is reversed and the prosecution under the indictment is ordered dismissed.